PAUL, ADMR., ET AL., APPELLEES, *v.* WEST AMERICAN INS. CO., APPELLANT.

(No. C-830683 — Decided July 11, 1984.)

*Bernard C. Fox,* for appellees.
*Joseph K. Wehby,* for appellant.

*Per Curiam.* This cause came on to be heard upon an appeal from the Court of Common Pleas of Hamilton County.

This timely appeal follows the trial court's granting of plaintiffs-appellees' motion for summary judgment in a wrongful death action.

Appellees' decedent, Joseph M. Paul, was killed in an automobile accident which occurred November 21, 1981 near Bonner Springs, Kansas. The decedent, a student at St. Louis University, was on his way to Colorado with three other students at the time of the accident. At approximately 4:30 a.m., David Ellerbrake, the driver of the automobile in which decedent was riding, pulled the automobile off the traveled portion of westbound Interstate 70 near Bonner Springs, Kansas. Douglas Wagner was driving his automobile in a westerly direction on Interstate 70, when he suddenly swerved onto the shoulder of the interstate at the same point where the Ellerbrake vehicle was stopped. The Wagner automobile struck the Ellerbrake vehicle in the rear, killing all four occupants.

Wagner was insured under a policy issued by Allstate Insurance Company. This policy was limited to $15,000 bodily injury coverage for each person and $30,000 for each occurrence. Plaintiffs-

appellees' claims against Wagner and Allstate Insurance Company were settled for $7,500, one-fourth of the total coverage per occurrence provided by the Allstate policy. The remaining money available under the Allstate policy was paid to the representatives of the three other accident victims. Wagner was tried in Kansas on criminal charges stemming from the accident. He was subsequently acquitted of all charges.

Defendant-appellant West American Insurance Company (hereinafter "West American") issued to appellees Glenn A. Paul and Mary E. R. Paul an insurance policy, which was in effect on November 21, 1981, containing an "underinsured motorist" clause. The "underinsured motorist" coverage provided limits of $100,000 for each person and $300,000 for each occurrence. It further provided that, in the case of an underinsured motorist, appellant would "pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury: (1) sustained by a covered person and (2) caused by an accident." The policy also provided for arbitration in the event of a dispute about eligibility for or the amount of damages. It is undisputed that Joseph M. Paul and appellees were "covered persons" within the meaning of the policy at the time of the death of Joseph M. Paul. It is also undisputed that appellant is licensed to do business in Ohio, appellees are all residents of Ohio, the policy of insurance was issued in Ohio and the estate of Joseph M. Paul is being administered in Hamilton County, Ohio.

A dispute arose between the parties as to whether the laws of the state of Kansas or the laws of the state of Ohio should govern the arbitration process. Kansas law limits recovery in wrongful death actions to $25,000 while Ohio law allows unlimited recovery in such cases. Appellees filed suit in the Hamilton County Court of Common Pleas, asking the court to declare that Ohio law is applicable to the arbitration proceedings. After appellant filed an answer, appellees filed a motion for summary judgment attached to which was an affidavit of appellee Glenn A. Paul. Appellant filed a memorandum in opposition to appellees' motion for summary judgment. The trial court granted the appellees' motion, holding that the arbitration proceedings should be governed by Ohio law.

Appellant alleges as its sole assignment of error that:

"The trial court erred to the prejudice of the defendant-appellant in granting the plaintiffs-appellees' motion for summary judgment."

Appellant contends that the trial court erred in holding that Ohio law, and not Kansas law, is applicable to the arbitration proceedings.

Appellant argues that, by the terms of the policy of insurance issued by appellant to appellees, appellees are limited to those damages which they are "legally entitled to recover" from the underinsured motorist, Wagner. Appellant contends that because Wagner is a resident of Kansas, appellees would have been required to bring suit against Wagner in Kansas and that under Kansas law appellees could never have recovered more than $25,000 from Wagner in a wrongful death action. Therefore, appellant argues, because appellees could never have been "legally entitled" to more than $25,000 from Wagner, appellant, under the insurance policy, is not liable for more than that amount. We disagree.

The record is devoid of evidence, other than appellant's unsupported allegation, as to the residency of Wagner. Because we cannot determine from the record the residency of Wagner, we cannot say that in no case could appellees recover more than $25,000 from Wagner in a wrongful

death action. If Wagner resided in a state which allowed unlimited recovery in wrongful death cases, appellees would not be precluded from bringing suit in that state and perhaps recovering more than $25,000. Therefore, we conclude that because appellees may be "legally entitled" to recover more than $25,000 from Wagner, appellees are not limited to a recovery of $25,000 under the terms of their insurance policy.

Appellant argues further that because the accident occurred in Kansas, the law of Kansas should be applied to the arbitration proceedings.

In deciding choice of law questions, Ohio courts apply a process of interest analysis. *Moats* v. *Metropolitan Bank of Lima* (1974), 40 Ohio St. 2d 47 [69 O.O.2d 323]; *Fox* v. *Morrison Motor Freight, Inc.* (1971), 25 Ohio St. 2d 193 [54 O.O.2d 301], certiorari denied (1971), 403 U.S. 931. The first step in such an analysis is to examine the law of the forum state and the law of any other state having an interest in the litigation to determine whether any state has a substantial governmental interest. Once such substantial governmental interests are found and identified, the conflicting governmental interests must be weighed to determine which state has the most substantial governmental interest in the outcome of the litigation. *Fox, supra,* at 199. The law of the state with the most substantial governmental interest should be applied. Our task is to examine the law of Ohio and the law of Kansas to determine which state has the most substantial governmental interest in the outcome of the case *sub judice.*

Kansas, as the situs of the tort, has an interest in determining the standard of care to be applied on the issue of liability in this case. See *Kliner* v. *Weirton Steel Co.* (N.D. Ohio 1974), 381 F. Supp. 275. The Supreme Court of Ohio recognized this interest in *Fox, supra,* at 198, stating:

"We have no doubt that if an issue were involved concerning the driving conduct of the parties within the state where the accident occurred that state would have a substantial interest in the determination of that issue; therefore, in choosing the law to be applied such an interest would have to be considered."

We believe that the state of Kansas has a substantial governmental interest in determining the standard of care of motor vehicle operation in that state. However, this determination does not necessarily lead us to the conclusion that Kansas law should apply to the amount of damages which may be recovered from an Ohio insurance company by an Ohio resident.

We also recognize that the state of Kansas may have a strong public policy against subjecting its citizens to recoveries of more than $25,000 in wrongful death cases. However, as we have noted, *supra,* there is no evidence in the record that Wagner is a resident of Kansas. Therefore, we conclude that the interest of the state of Kansas in the damages portion of the instant case is speculative at best.

The record reveals that the state of Ohio has a substantial governmental interest in the outcome of this litigation. Appellees are residents of Ohio, appellant is an Ohio insurance company, the policy of insurance was issued in Ohio and the estate of Joseph M. Paul is being administered in Hamilton County, Ohio.

In addition to these interests, the state of Ohio has a strong public policy to fully compensate its citizens in wrongful death cases. This strong public policy is evidenced by the Ohio constitutional provision against limiting recovery in wrongful death actions. Section 19(a), Article I, Ohio Constitution; see *Kliner, supra,* at 277. We believe that to apply the Kansas law limiting recovery to $25,000 in wrongful death cases, such as the one *sub judice,* in which the governmental interest of Kansas in the damages portion of the litigation is speculative at best, would be repugnant

to Ohio's strong legislative policy which constitutionally forbids limiting recoveries in wrongful death cases. We find that the compelling state interest of Ohio in fully compensating its citizens in wrongful death cases substantially outweighs the speculative interest of the state of Kansas in the damages portion of the instant case.

We hold, therefore, that the trial court did not err in finding that Ohio law is applicable in determining the amount of damages recoverable in the arbitration proceedings.

Appellant concedes that its second argument concerning the retroactivity of the amendments to R.C. 2125.02, Ohio's wrongful death statute, has been ruled upon by the Supreme Court of Ohio which held that the amended R.C. 2125.02 was to be applied to all wrongful death actions tried on or after February 5, 1982, the effective date of the new statute. *French* v. *Dwiggins* (1984), 9 Ohio St. 3d 32.

Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

KEEFE, P.J., DOAN and KLUS-MEIER, JJ., concur.